# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| PAMELA RUTH DANIEL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> ACTING COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:20-CV-49-RLW |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) and 1383(c)(3) to review a decision of the Commissioner of Social Security denying Daniel's application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income.

**I.    Background**

On May 23, 2017, Daniel protectively filed a Title II application for a period of disability and disability insurance benefits (DIB) and a Title XVI application of supplemental security income (SSI), both alleging disability beginning February 7, 2017. These claims were initially denied on August 23, 2017. On September 6, 2017, Daniel filed a written request for hearing. On January 24, 2019, the ALJ held a video hearing. On April 19, 2021, the ALJ issued a decision, finding Daniel was not disabled under Section 216(i) and 223(d) of the Social Security Act. (Tr.10-22). The Appeals Council of the Social Security Administration denied Daniel's request for review of the ALJ's decision (Tr. 1-3). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Daniel filed this appeal on March 10, 2020. (ECF No. 1). On October 21, 2020, Daniel filed a Brief in Support of her Complaint. (ECF No. 10). The Commissioner filed a Brief in Support of the Answer on November 18, 2020. (ECF No. 11). Daniel filed a Reply Brief on December 2, 2020. (ECF No. 12).

## II.     Decision of the ALJ

The ALJ concluded Daniel has the following severe impairments: lumbar degenerative disc disease with bilateral radiculopathy, mild dextroscoliosis, slight lumbar scoliosis, and mild chondromalacia bilateral knees. (Tr. 13). The ALJ concluded that Daniel's fibromyalgia was not severe at step two of the five-step sequential process. (Tr. at 13). The ALJ stated that Daniel's fibromyalgia did not meet the requirements of Social Security Ruling 12-2 for diagnosis. (Tr. 13). The ALJ discerned Daniel does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ found Daniel had the residual functional capacity (RFC) to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except standing and walking was limited to four hours in an eight hour workday and 30 minutes at any one time; reaching bilaterally was limited to frequent; sitting was limited to six hours in an eight hour workday and two hours at any one time; Daniel had the ability to raise one leg or the other approximately nine inches while seated and could remain on task; no use of foot controls; no climbing ropes, ladders, or scaffold; climbing ramps or stairs was limited to 15% of the workday; stooping squatting, and crouching were limited to occasional; no knelling or crawling; no exposure to extreme cold; and no using use air or vibrating tools, or working under hazardous conditions.

### III. Legal Standard

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words,

what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the

4

Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

### IV. Discussion

At the second step, the agency considers the medical severity of the claimant's impairments. 20 CFR § 404.1520(a)(4)(ii). "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th

Cir.2007). Under the regulations, a claimant's "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1521. That is, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id*. The social security administration "will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

Daniel argues that the ALJ erred by failing to support his analysis of Daniel's fibromyalgia at step two of the sequential evaluation. (ECF No. 10). Although Daniel testified that she had been diagnosed with fibromyalgia by a primary care physician in family care in Winona, Missouri, the ALJ found there was "no evidence of this diagnosis or any other trigger points assessment meeting the requirements for diagnosis per SSR 12-2p." (Tr. 13). The ALJ noted that Daniel reported pain "everywhere all over her body, which does not correlate to fibromyalgia pain in specific locations." (Tr. 13).

Daniel argues that the record contains evidence of Daniel's fibromyalgia, particularly the opinion from Nurse Practitioner Susan Norris, was sufficient to support a finding that Daniel's fibromyalgia is a medically determinable impairment at step two. NP Norris diagnosed Daniel with fibromyalgia. (Tr. 427). NP Norris noted Daniel had "tender[] muscles in back and fibromyalgia trigger points," and generalized tenderness. (ECF No. 10 at 3 (citing Tr. 410, 414, 422, 426, 473)). NP Norris did not indicate which tender points were present to show 11 tender points; rather, NP Norris noted the presence of generalized tenderness and fibromyalgia trigger points. (ECF No. 10 at 3 (citing Tr. 410, 414, 422, 426, 473)). Daniels contends that, as a result of her fibromyalgia, she had daily pain, and constant pain in her arms, legs, and feet." (ECF No. 10 at 6 (citing Tr. 44)). Daniel also claims that "the treatment notes indicate that other disorders

were ruled out as the cause of Daniel's symptoms." (ECF No. 10 at 3). In support of this claim that other disorders were ruled out, Daniel states that NP Norris stated that Daniel had been referred to an orthopedic doctor who indicated that there was nothing that could be done for Daniel and that Daniel's arthritis panel was negative. (ECF No. 10 at 3 (citing Tr. 472)). NP Norris prescribed Daniel medication, including amitriptyline, for treating fibromyalgia symptoms. (Tr. 407, 411, 418, 423, 427, 470).[1] Additionally, Daniel argues that the record shows the presence of at least six "symptoms, signs, or co-occurring condition" including muscle pain, fatigue, muscle weakness, insomnia, depression anxiety, memory problems, and nausea. (ECF No. 10 at 3 (citing T.R. 271, 282, 341, 358, 375, 410, 414, 421, 426, 472)). Daniels states that the treatment notes, medication management, Daniel's reports, and Daniel's testimony meet the de minimis standard of severity at step two. (ECF No. 10 at 6). Daniel maintains that NP Norris's diagnosis of fibromyalgia is not inconsistent with the evidence in the record and meets the requirements of Social Security Ruling 12-2p. *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html (last visited 9/10/2021).

Further, Daniel contends that the ALJ's failure to properly assess Daniel's fibromyalgia at step two adversely affected his evaluation of the medical opinions. (ECF No 10 at 7). The ALJ found the opinion of non-examining state agency medical consultant, Dr. Jung, was persuasive; the onion of the non-examining consultant, Dr. Cylus, was partially persuasive; the opinion of consultative examiner, Dr. Demorlis, was generally persuasive; and the treatment provider, NP Norris's Medical Source Statement—Physical was not persuasive. (Tr. 19-20). Daniel maintains

---

[1] As a nurse practitioner, Norris presents as an acceptable medical source for claims filed on or after March 27, 2017, and this claim was filed on June 19, 2017. *See* 20 C.F.R. §404.1502(a)(7) ("Acceptable medical source means a medical source who is a: Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (only with respect to claims filed (see § 404.614) on or after March 27, 2017").

that the ALJ's reliance on the opinions of non-examining state agency consultants and the consultative examiner do not provide substantial evidence on which to base the RFC. (ECF No. 10 at 7 (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). The ALJ determined that NP Norris's opinion was not persuasive because it was inconsistent with the level of treatment and generally normal findings. (Tr. 20). Daniel, however, contends the ALJ's failure to consider Daniel's "fibromyalgia as a possible cause of these symptoms may have affected the ALJ's view of what objective findings would be expected for Plaintiff's condition and what treatment would be appropriate for that condition." (ECF No. 10 at 8 (citing *Haynes v. Saul*, No. 1:19-CV-146-SPM, 2020 WL 5569984, at *6 (E.D. Mo. Sept. 17, 2020)). Daniel maintains that the ALJ's failure to consider Daniel's fibromyalgia affected his evaluation of NP Norris's opinion where she specifically listed fibromyalgia as a diagnosis. (ECF No. 10 at 8).

Finally, Daniel argues that the ALJ should have further developed the record regarding Daniel's impairment prior to ruling on the severity of her impairments. (ECF No. 10 at 8 (citing *Gasaway v. Apfel*, 187 F. 3d 840, 842 (8th Cir. 1999)). Daniel notes that Social Security ruling 12-2p provides that the ALJ may contact the treatment provider to request additional existing records or request additional information related to whether fibromyalgia is a medically determinable impairment.

The Court concludes that ample evidence supported the ALJ's conclusion that Daniel's fibromyalgia was not severe. "It is the claimant's burden to establish that an impairment, or combination of impairments, is severe." *Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 955 (D. Minn. 2010) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). Daniel relies heavily on the Court's decision in *Haynes v. Saul* because it involves a remand where the claimant

8

alleged disability, in part, due to fibromyalgia. The ALJ's decision in *Haynes*, however, was significantly lacking compared to the ALJ's analysis in this case. In *Haynes*,

> the ALJ's decision contains no mention of fibromyalgia—the ALJ does not address whether Plaintiff's fibromyalgia is a severe impairment, does not discuss Plaintiff's fibromyalgia his review of Plaintiff's medical records, and does not discuss Plaintiff's fibromyalgia when evaluating the consistency of Dr. Hester's opinions with the rest of the records. For the reasons discussed below, the ALJ's failure to evaluate or even discuss Plaintiff's fibromyalgia requires remand.

*Haynes v. Saul*, No. 1:19-CV-146-SPM, 2020 WL 5569984, at *4 (E.D. Mo. Sept. 17, 2020). Here, in contrast, the ALJ considered fibromyalgia and determined it was not a significant impairment based upon the medical evidence in the record. (Tr. 13). The ALJ noted that NP Norris included a diagnosis of fibromyalgia, but that it was not indicated anywhere else in the records. (Tr. 13). The record also did not include a trigger points assessment meeting the requirements for diagnosis under SSR 12-2p. (Tr. 13). *See* SSR 12-2p (in order to have a medically interminable impairment, a claimant must have "[a]t least 11 positive tender points on physical examination"). In addition, Daniel described her pain as "everywhere all over her body," which did not correlate to fibromyalgia pain in specific locations. (Tr. 13, 38). Again, contrary to *Haynes*, the ALJ specifically held that, based upon these factors, "the claimant's fibromyalgia [was] a nonsevere impairment." (Tr. 13).

Further, the ALJ accounted for Daniel's pain in discussing her other severe impairments. *See Ritchey v. Barnhart*, No. 4:04 CV 78 DDN, 2005 WL 6117485, at *12 (E.D. Mo. Sept. 6, 2005) (citing *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004)) (Fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions, for which no confirming diagnostic tests exist.).

The ALJ found that Daniel had degenerative disc disease of the lumbar spine with radiculopathy, dextroscoliosis, lumber scoliosis, and chondromalacia of the knees. (Tr. 13-16). The ALJ

9

considered Daniel's chronic pain systems in evaluating her various severe impairments. (Tr. 13). The ALJ continued through the sequential evaluation process, determining which alleged limitations were supported by the evidence, regardless of what diagnoses were attached to Daniel's conditions. (Tr. 13-21). *See* 20 C.F.R. §§404.1520, 416.920. Thus, although the ALJ did not consider her fibromyalgia to be a severe impairment, the ALJ nevertheless expressly considered her pain in arriving at Daniel's RFC. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (finding no merit to claimant's argument that ALJ failed to consider all of her impairments because ALJ properly considered combined effects of claimant's impairments when ALJ summarized claimant's medical records and discussed each of claimant's alleged impairments); *Rentzell v. Berryhill*, No. 4:17CV3037, 2018 WL 2050559, at *7 (D. Neb. May 1, 2018) (same). The Court finds that the ALJ's decision accounted for Daniel's pain, whether it was caused by fibromyalgia or other impairments.

Moreover, the record supports the ALJ's finding that fibromyalgia was not a severe medical impairment. Admittedly, NP Norris diagnosed Daniel with, and treated her for, fibromyalgia. (Tr. 405, 408, 410, 412, 414, 4116-18, 421-23, 426-27, 471, 473, 475-76). Norris also completed a Medical Source Statement in August 2018 and again diagnosed Daniel with fibromyalgia and knee pain. (Tr. 368). Norris indicated Daniel could never carry and could not stoop, balance, crouch, crawl, or climb. (Tr. 369). Norris indicated that Daniel had restrictions that could not be accommodated by even sedentary level limitations. (Tr. 368-70). However, the Court holds that NP Norris's treatment records do not support such significant limitations due to fibromyalgia or other conditions. (Tr. 20). NP Norris's treatment records indicate Daniel complained of muscle aches, arthralgias, joint pain, and back pain, but the clinical findings showed normal rheumatoid factor, no muscle weakness, normal motor and muscle tone and strength, and

normal gait. (Tr. 409, 410, 414-417, 421-22, 426, 473). Likewise, Daniel's other physicians and examiners did not include fibromyalgia as a diagnosed condition and their clinical findings likewise did not implicate fibromyalgia. Daniel's objective findings included normal musculoskeletal strength, normal gait, normal muscle tone, normal range of motion, normal neurological function, and normal posture. (Tr. 18-19, 272, 284-86, 306-09, 314-16, 326-31, 355-61, 388-94, 396-402, 480-82). On March 16, 2017, Daniel reported a 0 out of 10 level of pain. (Tr. 322). As late as December 11, 2018, Daniel had no tenderness to palpation in the lumbosacral spine. (Tr. 482).

In addition, the Court notes that non-examining state agency physician, John Jung, M.D. reviewed the records and issued a report on or around August 18, 2017. (Tr. 19, 70-75). Dr. Jung found, at the initial level of Daniel's claim, that fibromyalgia was not a severe impairment and recommended a medium RFC. The Court acknowledges that this review was performed prior to Daniel's treatment with NP Norris in May 2018. (Tr. 73, 423-27; *see also* ECF No. 12 at 3-4). Similarly, medical consultant, L. Cylus, M.D. reviewed the evidence on October 26, 2018, and discerned that fibromyalgia was not a severe impairment for Daniel. (Tr. 20, 379-86). Daniel argues that NP Norris's medical records were not reviewed as part of this evaluation. (ECF No. 12 at 3-4). Daniel argues that Dr. Jung and Dr. Cylus did not review NP Norris's records which included the fibromyalgia diagnosis and her supporting medical findings. The Court, however, again references its previous discussion discounting NP Norris's medical findings as being inconsistent with the rest of Daniel's medical providers' treatments, as well as with NP Norris's own clinical findings. The Court holds that the medical reviews performed by Dr. Jung and Dr. Cylus are consistent with the ALJ's determination that fibromyalgia was not a severe impairment

and undermines NP Norris's opinion that Daniel was disabled at least in part due to fibromyalgia. (Tr. 20, 368-70).

Under the substantial evidence standard, the Court does not reverse the Commissioner even if, sitting as finder of fact, the Court would have reached a contrary result; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150–51 (8th Cir. 1984)). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Eichelberger*, 390 F.3d at 589.

Substantial evidence in the record as a whole supports the ALJ's conclusion that Daniel's physical and mental impairments did not significantly limit her ability to perform basic work activities. The ALJ plainly believed that Daniel's fibromyalgia had no more than a minimal effect on her ability to work, and this conclusion is supported by the record. *See Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir.1991). Accordingly, the ALJ permissibly found that Daniel's fibromyalgia was not severe, and that Daniel was not disabled.

### V.      Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 13th day of September, 2021.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE